IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
SEP 30 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

STEPHEN P. HOLLICH, }
 }
    Plaintiff, }
 }
v. } CASE NO. CV 99-B-3431-NE
 }
DANIEL S. GOLDIN, Administrator, }
NASA, }
 }
    Defendant. }

ENTERED
OCT -2 2003

## MEMORANDUM OPINION

    The court conducted a bench trial on plaintiff's one remaining age discrimination claim.[1] The issue before the court is whether defendant discriminated against the plaintiff on the basis of his age when he was not selected for the position of AST, Reliability & Quality Assurance, GS-861-14, announced in vacancy number CPP-94-35-PL. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the court hereby enters this Memorandum Opinion, which sets forth its findings of fact and conclusions of law.

I.    **Applicable Legal Framework**

    In this case, plaintiff contends defendant discriminated against him on the basis of age with regard to his non-selection for a vacant position in violation of the ADEA. The ADEA makes it "unlawful for an employer to . . . otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a prima facie case of age discrimination in three ways: (1) by presenting direct evidence of discriminatory intent; (2) by satisfying the circumstantial evidence elements set forth in *McDonnell Douglas v. Green*, 411

---

    [1]By separate Order the court is granting defendant's Motion to Dismiss or for Summary Judgment as to plaintiff's other claims.

U.S. 792 (1973) as modified;[2] or (3) by statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). In this case, plaintiff seeks to establish a prima facie case of age discrimination using both direct evidence and circumstantial evidence.

1. **Direct Evidence Standard**

Direct evidence is "'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" *Merrit v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)). The Eleventh Circuit acknowledges that this is a rigorous standard. *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1359 (11th Cir. 1999). Direct evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism." *Id.* Thus, "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence of discrimination." *Id.* (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)). For example, "direct evidence would be a management memorandum saying, 'Fire Earley - - he is too old.'" *Earley*, 907 F.2d at 1082.

Evidence that merely "suggests discrimination . . . or that is subject to more than one interpretation . . . does not constitute direct evidence." *Merrit*, 120 F.3d at 1189 (internal citations omitted). Stray remarks, statements by non-decision makers, and statements by decision makers unrelated to the decisional process, do not constitute direct evidence of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 924, (11th Cir. 1990) (quoting *Price Waterhouse*, 490 U.S. 228, 277 (1989)).

---

[2] *McDonnell Douglas* involved racial discrimination, but its holding subsequently has been adapted to other forms of employment discrimination, such as age discrimination. *See Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

2

### 2. **Circumstantial Evidence**

Absent direct evidence of discrimination, a plaintiff in a failure-to-hire case must establish a prima facie case by showing that (1) he is a member of a protected class, (2) he applied for and was qualified for the position, (3) despite his qualifications, he was rejected, and (4) or was filled by a person outside the protected class or significantly younger. *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310-11 (1996)

### 3. **Burden-Shifting Analysis**

If a plaintiff presents direct evidence of the employer's discriminatory motive, then the employer must prove, by a preponderance of the evidence, that it would have made the same decision even if it had not considered unlawful criteria. *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1554-55 (11th Cir. 1990). In age discrimination claims based on circumstantial evidence, the Eleventh Circuit applies the familiar analysis established in *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). If a plaintiff establishes a prima facie case of age discrimination based on circumstantial evidence, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Chapman*, 229 F.3d at 1024. However, the employer's burden is merely one of production; it "'need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55) (citations and footnote omitted).

If the employer articulates one or more such legitimate, nondiscriminatory reasons, the presumption of discrimination vanishes, and "'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case,

3

sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman*, 229 F.3d at 1024 (internal citation omitted). If the plaintiff fails to produce sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment. *See id.* at 1024-25. If plaintiff produces sufficient evidence to create a genuine issue of material fact regarding the credence of defendant's articulated reasons, the issue of whether defendant's real reason was age discrimination is for the fact finder. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

## II. Findings of Fact

### A. Undisputed facts agreed by the parties in the pretrial order entered by the court on May 1, 2002:

1. Plaintiff was employed by NASA from September 1981 until his early retirement in January 1999.

2. On or about August 8, 1994, NASA posted a job vacancy announcement No. CPP-94-35-PL, for the position of AST, Reliability & Quality Assurance (GS-14).

3. This vacancy was in the Observatory Assurance Office of the Safety and Mission Assurance ("S&MA") Office.

4. This announcement sought a safety, reliability, maintainability, and quality assurance ("SRM&QA") technical authority responsible for all aspects of SRM&QA with the Observatory Projects Office.

5. Five applicants were determined to be qualified for the position.

6. The selecting official for this position was James L. Hatfield, Director, Observatory Assurance Office.

7. Plaintiff applied for and was qualified for this position.

8. Plaintiff's birth date is July 11, 1932.

9. At the time of the posting of the position, plaintiff was age 62.

10. On or about August 30, 1994, NASA selected Alan Clark for the CPP-94-35-PL position.

11. Selectee Alan Clark's birth date is July 6, 1952.

12. At the time of the posting of the position, selectee Alan Clark was age 42.

13. Mr. Clark's promotion was effective September 4, 1994.

14. Plaintiff timely initiated an administrative complaint for age discrimination.

**B.    Trial Testimony**

As noted above, plaintiff alleges age discrimination based on his non-selection for the position of AeroSpace Technology (AST), Reliability & Quality Assurance, GS-861-14, announced in Vacancy Number CPP-94-35-PL. This position was in the Observatory Assurance Office of the Safety and Mission Assurance ("S&MA") Office at Marshal Space Flight Center ("MSFC") in Huntsville, Alabama. The S&MA was created in 1986 after the Challenger incident. (Testimony of James Hatfield).

**C.    Alleged Direct Evidence**

Plaintiff testified that, during his interview for the position at issue, Hatfield told him that "he [the plaintiff] was older than the other fellows seeking the job;" "we're looking for someone younger;" and "I think you're too old for this job." Plaintiff also offered into evidence a document entitled "Memo for Record." (Plaintiff's Exhibit 2). Plaintiff testified that he wrote this memo immediately after his interview with Hatfield. The memo is signed by the plaintiff and dated August 29, 1994.[3] Plaintiff writes in this memo that Hatfield told plaintiff in his

---

[3]Defendant argued that this document was inadmissible because plaintiff did not timely disclose it. Given the timing of the production, one could infer that it was created during the

5

interview that, although he was well qualified, he was older than the other applicants and too old for the position. *See id.* Hatfield testified that he did not mention plaintiff's age in the interview. Hatfield also testified that he did not consider plaintiff's age when he made the decision to select Clark over the plaintiff.

There are two bases for calling into doubt plaintiff's version of his interview with Hatfield: First, the last sentence of the memo reads, "I did not expect to be selected for this job." If, as plaintiff testified, the memo was written immediately after his interview with Hatfield, one would expect the sentence to read, "I *do* not expect to be selected for this job," since the vacancy had not yet been filled. The second basis for questioning plaintiff's version derives from his knowledge of discrimination law. Prior to this lawsuit, plaintiff had filed "approximately four" claims of discrimination. According to plaintiff's testimony, at least one was based on alleged age discrimination. It is reasonable to assume that plaintiff would know that if Hatfield made the comments plaintiff attributes to him, it would help establish a case of age discrimination if plaintiff was not selected for the position. Of course, if the court credits the plaintiff's testimony that Hatfield made these comments concerning plaintiff's age, this would constitute direct evidence of discrimination.

The Eleventh Circuit has noted the trial court's duty in a case where the plaintiff has offered direct evidence of discrimination:

> In a discrimination case in which a plaintiff adduces direct evidence of discrimination, the trial judge must initially make a credibility finding as to whether or not plaintiff's proffered direct evidence of discrimination is to be believed . . . The trial court must also make a finding of fact as to whether or not the decision maker "relied upon sex-based considerations in coming to its decision."  . . . In other words, the fact finder must determine whether "gender played a motivating part in an employment

---

pendency of the lawsuit and not immediately following his interview.

> decision." . . . If the trial court both credits the direct evidence and finds that the evidence played a substantial role in the employment decision at issue, then the defendant can avoid liability only by proving that it would have made the same decision even if it had not allowed such discrimination to play a role.

*Haynes v. W.C. Caye & Company, Inc.*, 52 F.3d 928, 931 (11th Cir. 1995). (citations omitted).

The court initially had difficulty in deciding whether to credit the plaintiff's testimony that Hatfield told him in the interview that he was too old for the job, or the testimony of Hatfield that he did not make such comments.[4] However, upon consideration of all the testimony, as well as the demeanor of Mr. Hatfield and Mr. Hollich, the court credits the testimony of Mr. Hatfield that he did not make age-based comments during plaintiff's interview for the position at issue in this case. Hatfield testified that he had gone through "EEO sensitivity training" on several occasions. Assuming he remembered any part of his training, it would strain credulity to believe that Hatfield would state to an applicant (as plaintiff suggests) "you are too old for this job."

However, even crediting the plaintiff's testimony that Hatfield made negative remarks concerning plaintiff's age, the court concludes that plaintiff's age was not a motivating factor in the decision by Hatfield to select Alan Clark for the vacant position. Based on Hatfield's entire testimony, the court finds that Hatfield was of the opinion that Alan Clark was the most qualified person for the vacant position. In addition, the court is of the opinion that even if plaintiff's age

---

[4] As the court observed during the trial, it appeared at times that Hatfield was unprepared for his testimony. In addition, several inconsistencies were pointed out by plaintiff's counsel. For example, in an Affidavit signed by Hatfield on July 12, 1995, during the agency's investigation of plaintiff's charge of discrimination, Hatfield stated that his meeting (interview) with the plaintiff lasted for "over an hour." (See PX 3 at page 2), Hatfield stated further, "I wanted to make sure that I was very familiar with what his capabilities were, so I gave him as much time as needed to explain his background." *Id.* In contrast, Hatfield testified during the trial that his interview with the plaintiff lasted twenty-five to thirty minutes. If the court's notes are correct, at another point he testified plaintiff's interview lasted fifteen to twenty minutes. Plaintiff testified his entire interview with Hatfield lasted about twelve minutes.

was a factor in the decision by Hatfield, he would have made the same decision even in the absence of the age discrimination.

Hatfield testified that he knew four of the five applicants who were rated qualified for the position by the personnel department. The only applicant he did not know was the plaintiff. At the time of the selection, Hatfield was personally supervising Alan Clark, the person Hatfield ultimately selected for the position. Each of the applicants' supervisors submitted a KSAOC (pronounced K-SOC) (Knowledges, Skills, Abilities, And Other Characteristics) form rating the applicant on four "Ability Statements Representing Job Elements" of the announced position.[5] Two of the elements were rated MI (Most Important) and two were rated MQ (Minimum Qualifications). Hatfield rated Clark as "Superior" in all four categories. Plaintiff's supervisor rated him "Superior" in two of the categories (one MI category and one MQ category) and "Between Superior and Satisfactory" in two categories (one MI and one MQ).

Hatfield testified that in making his selection he considered the applicants' written submissions, which included the application form and a supervisory KSAOC evaluation; his personal knowledge of the applicants; and his interviews with the applicants.

Hatfield testified that he considered Clark the most qualified person for the job for a number of reasons:

- He was Clark's supervisor and knew the quality of his work.
- Clark had seven outstanding performance appraisals.
- Clark was working in AXAF at the time of his selection.[6]

---

[5] The duties listed in the KSAOC are assigned by the organization needing the position. (Testimony of Frank Bynum and James Hatfield).

[6] AXAF is an acronym for Advanced X-Ray Astrophysics Facility. (Testimony of Hatfield, and defendant's trial memo at p.3). This office was in the Safety and Mission Assurance Office.

- Clark had experience working with government contractors.

- Clark's capabilities complemented Hatfield's capabilities. According to Hatfield, if Clark had a weak area it was in system safety and Hatfield was strong in system safety.

Hatfield's opinion was that plaintiff's prior work experience was not particularly related to the type of work required in the position. Hatfield testified that during his interview plaintiff spent a long time talking about institutional safety, but the position at issue was concerned with systems safety.

Hatfield also testified that he questioned the veracity of plaintiff's statement in his interview that he had worked system safety on the tether satellite system. Hatfield testified that upon inquiry he was told that plaintiff did not work on this project as he claimed.

Plaintiff's counsel argued in closing argument that the evidence supports a finding that Hatfield "pre-selected" Clark for the position before it was actually announced.[7] Specifically, plaintiff points to his Exhibit 24, where Hatfield approved a position description change for the GS 13 position occupied by Clark. (The document was signed by Hatfield on March 31, 1994). The first duty described for Mr. Clark's position reads as follows:

> Serves as a Safety and Mission Assurance (S&MA) Office Project Engineer responsible for safety, reliability, maintainability, and quality assurance (SRM&QA) functions within the Observatory Project Office. Provides technical direction and monitors the activities of 10 - 15 engineers and technicians performing SRM&QA functions.

This description is identical to the duties described for the vacant position at issue at trial. (*See* PX 1).

---

[7]Frank Bynum, former Director of Personnel at Marshal Space Flight Center, testified to the obvious fact that preselection is not permitted for a competitive position.

Plaintiff argued that Hatfield wanted the job description of Clark's job to match the duties of the vacant position so that he could argue that Clark was already performing the duties. Even accepting this scenario, it does not help plaintiff's claim. If, as plaintiff argues, Hatfield pre-selected Clark before the position was even announced, it would be impossible for him to have discriminated against plaintiff on the basis of his age since Hatfield had (according to plaintiff's argument) predetermined that Clark would be selected for the position before knowing who would be applying for the position.

Hatfield was supervising Clark at the time of the selection and may very well have been biased in his favor. However, absent other evidence, favoritism is not evidence that an unlawful factor such as age played a role in the employment decision. *See, e.g. Womack v. Runyon*, 147 F.3d 1298 (11th Cir. 1998), (affirming district court's conclusion that Title VII does not encompass a claim based on favoritism to a supervisor's paramour). If in this case, as plaintiff argues, Hatfield favored Clark because he knew him and worked closely with him, such favoritism is not actionable age discrimination.

### D.  Circumstantial Evidence

Plaintiff established a prima facie case of age discrimination. Defendant articulated a non-discriminatory reason for the selection of Clark: Hatfield believed that Clark was the most qualified person for the position. For the reasons stated above, the court finds that plaintiff did not establish that defendant's legitimate non-discriminatory reason was pretext for unlawful age discrimination.

## Conclusion

For the foregoing reasons, judgment will be entered in favor of the defendant on plaintiff's age discrimination claim with regard to his non-selection to the GS-861-14 position at issue in trial.

**DONE** this 30th day of September, 2003.

*[signature]*
**SHARON LOVELACE BLACKBURN**
United States District Judge